NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0661n.06

Nos. 19-3223/3225

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| IN RE: LAWRENCE JAMES WOHLEBER, JR., | ) ) | **FILED**<br>Nov 18, 2020<br>DEBORAH S. HUNT, Clerk |
| *Debtor.* | ) ) ) |  |
| LAWRENCE JAMES WOHLEBER, JR., | ) ) | ON APPEAL FROM THE<br>UNITED STATES |
| Plaintiff-Appellee, | ) ) | BANKRUPTCY APPELLATE<br>PANEL FOR THE SIXTH |
| v. | ) ) | CIRCUIT |
| JENNIFER SKURKO; LESLIE A. GENTILE, | ) ) |  |
| Defendants-Appellants. | ) ) ) |  |

**BEFORE:** BATCHELDER, WHITE, and MURPHY, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Jennifer Skurko and Leslie Gentile appeal from an order of the Bankruptcy Appellate Panel ("BAP") reversing the bankruptcy court, vacating its decision that there was no violation of an automatic stay, and remanding for further proceedings. Because the BAP's order was not final, we dismiss the appeals for lack of jurisdiction.

I.

Plaintiff Lawrence Wohleber and Defendant Jennifer Skurko have been involved in a protracted domestic relations proceeding in the Court of Common Pleas of Lorain County, Ohio. That court granted their divorce and entered a property settlement in Skurko's favor in 2006. After several appeals, the court ordered Wohleber to pay Skurko $36,459.33 within 21 days ("property

settlement"). For the next nine months, the parties litigated and appealed several issues concerning the property settlement. On July 2, 2013, Defendant Leslie Gentile, Skurko's attorney, sought a show-cause order because Wohleber had failed to pay the property settlement. On July 22, 2013, Judge Debra Boros found Wohleber in contempt. The contempt order stated that Wohleber could purge the contempt by paying the property settlement in full by October 1, 2013, but set a sentencing hearing for October 8 in case Wohleber failed to do so.

Wohleber did not pay the property settlement by October 1, 2013. On October 4, 2013—four days before the scheduled sentencing hearing—Wohleber filed a Chapter 13 bankruptcy petition in the Northern District of Ohio. That same day, Wohleber's bankruptcy attorney filed a suggestion of bankruptcy in the state court. On October 8, 2013, Judge Boros met with counsel in chambers before the sentencing hearing to provide both "parties the opportunity to explain why the sentencing hearing was stayed by the bankruptcy petition, despite her research concluding otherwise." R. 155, BAP Op. at 5. During the subsequent contempt hearing, Skurko and her counsel were silent except to confirm on the record that Wohleber failed to pay the property settlement. Judge Boros sentenced Wohleber to 30 days in the Lorain County Jail. Wohleber's jail sentence included "a provision that he be released upon payment of the property settlement which is the basis for the contempt." Joint Stipulation, R. 122, ¶ 6. Wohleber remained incarcerated for ten days before the state court, "by agreement of the parties," held the remainder of Wohleber's sentence in abeyance pending resolution of Wohleber's bankruptcy proceeding. *Id.* at 26. Wohleber later dismissed his bankruptcy petition, at which time Gentile filed a motion on Skurko's behalf to reimpose the contempt sentence. A day before a hearing on Skurko's motion, Wohleber filed a second bankruptcy petition. This time, the state court stayed all proceedings pending resolution of Wohleber's bankruptcy case.

Two years into this second bankruptcy case, Wohleber initiated this adversary proceeding against Skurko, Gentile, and Judge Boros alleging that their actions violated the automatic stay, 11 U.S.C. § 362, and seeking monetary damages. All three defendants moved to dismiss the adversary proceeding. The bankruptcy court dismissed Judge Boros from the case on immunity grounds but denied Gentile and Skurko's motions. The bankruptcy court later denied summary judgment motions brought by all parties and conducted a trial on Wohleber's adversary proceeding. At the conclusion of Wohleber's case-in-chief, Gentile moved for judgment on partial findings under Rule 52(c).[1] The bankruptcy court granted the motion, concluding that Wohleber failed to demonstrate a violation of the automatic stay. Wohleber appealed.

On appeal, the BAP held that the "sentencing hearing was a continuation of a judicial proceeding against the debtor to recover a pre-petition debt of the debtor" and therefore a violation of the automatic stay. BAP Op. at 13. It also concluded that Skurko and Gentile had a duty to take action to prevent the sentencing hearing and Wohleber's confinement from occurring. Because the bankruptcy court granted the motion for judgment on partial findings before Gentile and Skurko had a chance to present their cases, the BAP remanded to the bankruptcy court for the "completion of the liability portion of the trial," allowing Gentile and Skurko to present evidence on whether they took any affirmative steps to prevent the sentencing hearing or Wohleber's confinement from occurring. The BAP's decision directed that if the bankruptcy court determines on remand that Gentile and Skurko failed to meet their duty to prevent the stay violation, it should also determine damages under 11 U.S.C. § 362(k). Gentile and Skurko appeal from that order.

---

[1] Federal Rule of Bankruptcy Procedure 7052 makes Rule 52 applicable to adversary proceedings.

## II.

In their initial briefs, Gentile and Skurko asserted that we have jurisdiction to review the BAP's order under 28 U.S.C. § 158(d)(1), which gives courts of appeals jurisdiction of "appeals from all final decisions, judgments, orders, and decrees" entered by a BAP. Following oral argument, we directed the parties to brief whether we have jurisdiction under this section where the order being appealed remanded to the bankruptcy court for further proceedings. We directed the parties to address certain cases holding that such an order does not qualify as final under 28 U.S.C. § 158(d)(1). *See, e.g.*, *In re Cyberco Holdings, Inc.*, 734 F.3d 432, 436 (6th Cir. 2013); *see also Settembre v. Fid. & Guar. Life Ins. Co.*, 552 F.3d 438, 441 (6th Cir. 2009). In their supplemental briefs, Gentile and Skurko make a number of new arguments in support of our jurisdiction, including that these cases are distinguishable; that finality operates differently in the bankruptcy context, rendering the BAP's decision "final" for purposes of § 158(d); that declining jurisdiction would insulate the BAP's decision from appellate review; and that we may review the BAP's order under the collateral-order doctrine. We are not persuaded.

First, the BAP's order is not final. Our cases hold that "a decision by the [BAP] on appeal remanding the bankruptcy court's decision for further proceedings in the bankruptcy court is not final, and so is not appealable to this court, unless the further proceedings contemplated are of a purely ministerial character." *Settembre*, 552 F.3d at 441; *see In re Cyberco Holdings,* 734 F.3d at 436. The BAP's order remanded the case to the bankruptcy court for the "completion of the liability phase" of the adversary proceeding and, if necessary, calculation of damages. BAP Op. at 27. Such orders contemplate proceedings that are not purely ministerial in nature. *In re Swegan*, 555 F.3d 510, 512 (6th Cir. 2009) (proceedings involving additional fact-finding by bankruptcy court were not ministerial); *In re Bradley*, 588 F. App'x 480, 482-83 (6th Cir. 2014) (BAP order

4

remanding for a determination of damages contemplates further proceedings that are not purely ministerial).

Gentile and Skurko argue that these cases are distinguishable because they all concerned adversary proceedings involving the "administration of a bankruptcy case." Skurko Br. at 3. This is true but irrelevant. Our jurisdiction derives from statute, and the statute that Gentile and Skurko rely on, 28 U.S.C. § 158(d)(1), requires a final decision—regardless of the underlying subject matter of the adversary proceeding. Although it is true that "[t]his finality requirement is considered in a more pragmatic and less technical way in bankruptcy cases than in other situations," *In re Dow Corning Corp.*, 86 F.3d 482, 488 (6th Cir. 1996) (citation omitted), this does not alter our conclusion that the BAP's order is not final. The relaxed finality rule derives from the understanding that bankruptcy cases are "aggregation[s] of individual disputes, many of which could be entire cases on their own." *In re Jackson Masonry, LLC*, 906 F.3d 494, 498 (6th Cir. 2018). As a result, orders finally resolving discrete disputes in a bankruptcy case—such as adversary proceedings—may qualify as immediately appealable final orders even though the overall bankruptcy case is ongoing. *Id.* However, the BAP's order is not such an order, and because it did not conclusively resolve Wohleber's adversary proceeding, it is not final.

Gentile and Skurko also contend that declining to review the BAP's order would insulate its rulings from appellate review, *see, e.g.*, Skurko Br. at 2 ("The BAP's ruling . . . becomes the law of the case binding upon the Bankruptcy Court and never subject to appellate review"), but fail to provide support for this assertion. They are mistaken. The law-of-the-case doctrine does not prevent a superior court from reviewing the decisions of an inferior court. *See, e.g.*, *In re Raynor*, 617 F.3d 1065, 1068 (8th Cir. 2010) ("As the reviewing court, we are bound by neither the [bankruptcy] court nor the BAP decision."). On remand, the bankruptcy court will be required

to conduct the remainder of the liability portion of the adversary proceeding—and if it finds liability, assess damages—setting forth its findings of fact and conclusions of law in accordance with Rule 52. To be sure, some of the bankruptcy court's findings of fact and conclusions of law will be governed by the BAP's order; but, this does not prevent Gentile and Skurko from preserving their disagreement with those rulings for appellate review, and does not mean that we can never review whether those decisions are correct. Even if a subsequent BAP decides that it is bound by the prior BAP's order, we are not, as "[w]e independently review the decision of the bankruptcy court that comes to us by way of appeal from a Bankruptcy Appellate Panel." *Nardei v. Maughan (In re Maughan)*, 340 F.3d 337, 341 (6th Cir. 2003).

Further, to the extent Gentile and Skurko argue that the law of the case will prevent us from ever deciding these issues if we dismiss their appeals, they are incorrect. "[T]he law of the case is . . . based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter." *United States v. United States Smelting Refining & Mining Co.*, 339 U.S. 186, 198 (1950). But, "[w]hen a case is dismissed . . . for lack of subject matter jurisdiction, nothing has been 'litigated and decided,'" because such a dismissal is not an adjudication on the merits. *Holloway v. Brush*, 220 F.3d 767, 778 (6th Cir. 2000) (en banc). The law-of-the-case doctrine will not preclude us from deciding these issues in a future appeal.

Finally, Gentile argues that we may review the BAP's order under the collateral-order doctrine, which permits appeal from a "small class" of "decisions that, though short of final judgment, are immediately appealable because they 'finally determine claims of right separable from, and collateral to, rights asserted in the action.'" *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996) (quoting *Cohen v. Beneficial Indust. Loan Corp.*, 337 U.S. 541, 546 (1949)). Three conditions must be satisfied before the collateral-order doctrine applies. The order must

"[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (quoting *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)). The collateral-order doctrine does not permit our review here for several reasons. First, the BAP's order did not finally determine any claim. *In re Blasingame*, 651 F. App'x 386, 389 (6th Cir. 2016). Second, the BAP's order that Gentile and Skurko had a duty to take action to prevent Wohleber's sentencing hearing is not separate from—but rather central to—resolving Wohleber's adversary proceeding. Finally, as explained above, the BAP's rulings are not effectively unreviewable on appeal from a final decision. As Gentile herself recognizes in her brief, "[i]n the event of an adverse judgment, there will be another appeal to the BAP which will no doubt feel compelled to apply the erroneous determination made below, resulting in another appeal to this Court." Gentile Br. at 8. This is no doubt true, but that subsequent appeal will be the one properly before this Court. The collateral-order doctrine does not permit review of the BAP's decision at this point.[2]

---

[2] Our concurring colleague argues that we should abandon *Settembre* and adopt a new rule whereby we would have jurisdiction over appeals in which either the bankruptcy court's judgment or the intermediate (BAP or district court) judgment satisfies the *Bullard* finality test. We see two issues with this proposal. First, it is not clear that such a rule would be consistent with 28 U.S.C. § 158(d)(1), which gives courts of appeals jurisdiction over "all final decisions, judgments, orders, and decrees" entered by a BAP or district court—not the bankruptcy court. *See In re Brown*, 248 F.3d 484, 487 (6th Cir. 2001) (Holding that under § 158(d) "we are to inquire into the finality of [the district court's and BAP's] decisions; not the finality of the bankruptcy court's decision."). Second, the new rule would be largely redundant. Under 28 U.S.C. § 158(d)(2)(A)(iii), enacted in 2005, a bankruptcy court (or district court or BAP) may certify, a party may request the court to certify, or the parties together may certify, that this court should hear an immediate appeal from a non-final ruling of the bankruptcy court when "an immediate appeal from the judgment, order, or decree may materially advance the progress of the case [.]" *See Bullard*, 135 S. Ct. at 1696; *In re Lindsey*, 726 F.3d 857, 858 (6th Cir. 2013). However, the parties did not seek such certification, and thus we lack jurisdiction to hear this appeal.

## III.

For the foregoing reasons, we **DISMISS** Gentile and Skurko's appeals for lack of jurisdiction.

**ALICE M. BATCHELDER, Circuit Judge, concurring in the judgment.** The lead opinion dismisses this appeal based on a court-made limit on our jurisdiction, effectively affirming the Bankruptcy Appellate Panel (BAP) and returning the case to the bankruptcy court for extensive further proceedings. Because this is a proper application of Sixth Circuit precedent, I concur in the judgment, but I disagree with this precedent and the result it causes here.

In my opinion, the bankruptcy court was correct in both its determination that the defendants owed no duty to the plaintiff-debtor and its decision to end the action on that basis, and the BAP was clearly wrong. If I am right, then the forthcoming proceedings are a waste of everyone's time and resources. There will be an evidentiary hearing, as the BAP ordered, and a legal ruling in the bankruptcy court, another intermediate appeal (to the BAP or the district court) and intermediate-appellate ruling, and the case will return here on appeal, whereupon a panel will hold that the defendants did not owe the plaintiff-debtor any duty and will end the action on that basis, thus ignoring—and rendering worthless—all of those additional proceedings.

While the attorneys might appreciate the extra billings, I doubt that the bankruptcy court or the parties themselves will be so appreciative. And, even if the majority here would hold that the defendants do somehow owe this supposed duty to the plaintiff-debtor, then establishing that holding as the law of the case would likely expedite those proceedings or maybe encourage settlement negotiations. Then again, if I am right and the defendants are sitting on a trump card, they would have no motivation to negotiate or to exert themselves defending this action; they just need a final decision so they can return here for a correct legal ruling.

Because our self-imposed limit on our jurisdiction is counterproductive in this case, and because it creates some friction with our ordinary approach to deciding bankruptcy appeals, it would appear to warrant reconsideration or modification. And, to put it mildly, "the Supreme

Court has expressed disfavor for prudential doctrines that abdicate jurisdiction and has emphasized the duty federal courts have to exercise jurisdiction." *In re City of Detroit*, 838 F.3d 792, 800 (6th Cir. 2016). Judge Moore was more emphatic in her dissent in that case:

> The current trend at the Supreme Court is toward a greater recognition of our virtually unflagging obligation to exercise the jurisdiction given us. Where once we relied on prudential doctrines that used jurisdictional jargon to justify deciding not to decide a case, the Supreme Court is now skeptical of such self-imposed straitjackets. At bottom, this is a recognition that it is rarely our job as judges to decline to exercise our judicial power in a case that is otherwise within our jurisdiction. Just as a court cannot apply its independent policy judgment to recognize a cause of action that Congress has denied, it cannot limit a cause of action that Congress has created merely because prudence dictates. Deciding not to decide can thus be a form of judicial overreach, not restraint.

*Id.* at 805-06 (Moore, J., dissenting) (quotation marks, editorial marks, and citations omitted).

With that in mind, I would argue that the rule should be that we have appellate jurisdiction if *either* the bankruptcy court's judgment *or* the intermediate appellate judgment is final.

## I.

Back in 2004, Lawrence Wohleber and Jennifer Skurko filed for divorce in the state domestic relations court ("family court"), which granted the divorce and ordered Wohleber to pay a property settlement. But Wohleber never paid and the dispute went on and on. In July 2013, Skurko and her lawyer, Leslie Gentile, moved the family court to compel Wohleber to pay. Eventually, the family court held Wohleber in contempt, but allowed that he could purge by paying $36,459 to Skurko and $10,510 to Gentile by October 1, 2013. Wohleber did not pay.

Instead, on October 4, Wohleber filed a petition for Chapter 13 bankruptcy and his lawyer notified the family court about it that same day. Nonetheless, the family court ordered Wohleber to appear on October 8 for "sentencing" on its contempt ruling, which was technically just between the family court and Wohleber; Gentile and Skurko did not even need to be there. But they were

there, and the family court judge encouraged the parties to try once more to settle and said she would accept any agreement they could reach. They reached no agreement.

The family court "sentenced" Wohleber to 30 days in jail, unless he paid the property settlement. It bears mention that, in doing so, the family court judge said, on the record, that she had already determined for herself that the bankruptcy automatic stay did not apply, but offered Wohleber's attorney a chance to produce case law to show that it did—he declined to do so, instead conceding that it did not apply. Gentile and Skurko played no meaningful role in this. Wohleber remained in jail until October 17, when the family court released him and held the jail term in abeyance until his bankruptcy was done. It is unclear whether Wohleber ever paid.

Three years later, Wohleber filed this action in his bankruptcy case, claiming that Skurko, Gentile, and the family court judge violated the automatic stay by imposing the contempt sanction. The bankruptcy court granted absolute immunity to the family court judge and dismissed her but held a bench trial on the claims against Gentile and Skurko. Ultimately, the bankruptcy court ruled that there was no violation of the automatic stay and that Gentile and Skurko had no duty to stop the family court judge from imposing the contempt sanction; it granted judgment to Gentile and Skurko. That was a final and appealable judgment.

Wohleber appealed the judgment to the BAP, which reversed, finding that, because the contempt ruling was intended to compel Wohleber to pay his financial obligation (rather than uphold the court's integrity), it was civil contempt, not criminal, so it violated the automatic stay. That ruling was correct. But the BAP then held that Gentile and Skurko had an affirmative duty to prevent the family court (and, presumably, the bankruptcy court) from committing that violation, so they were liable in damages. The BAP remanded for further proceedings to quantify the damages. *In re Wohleber*, 596 B.R. 554 (B.A.P. 6th Cir. 2019).

11

Regardless of whether the bankruptcy court was correct in holding that the bankruptcy stay did not apply to the family court's contempt action against Wohleber—and I agree that it was not—that was nonetheless a legal issue or dispute, open to argument by the parties and decision by the court. Moreover, given that the family court, and later the bankruptcy court, agreed that the bankruptcy stay did not apply, that was a "winning" argument in both of those forums. Incredibly, the BAP held that Skurko and her attorney had a "duty" to abandon that argument (regardless of its merit, apparently), to insist instead that the bankruptcy stay *did* apply (even though Wohleber's attorney agreed that it did not apply), and to persuade the family court (and presumably the bankruptcy court) that the stay applied. When an attorney abandons a client's winning argument and instead argues *against* the client's interests, that attorney is risking a charge of malpractice. Hence, the BAP in essence held that Skurko's attorney, Gentile, had a "duty" to commit legal malpractice (and the client, Skurko, had a "duty" to order Gentile to do so).

Gentile and Skurko appealed here, claiming, among other things, that, as adversarial parties to a legitimate legal dispute in the family court, they had neither the duty nor the ability to prevent the family court from imposing the sanction on Wohleber. It was for the family court to decide whether the automatic stay applied to the contempt action; their role in an adversarial system was to argue that it did not. As it happened, however, their participation was unnecessary because Wohleber's attorney conceded that the stay did not apply, and the family court announced that it had already determined that the stay did not apply. Therefore, they conclude, the BAP erred by imposing a "duty" to abandon their adversarial role in the proceedings or to abandon any legal arguments about why the stay might not apply in their circumstances.

After hearing oral argument in this appeal, we requested supplemental briefing on a Sixth Circuit jurisdictional doctrine under which an intermediate-appellate (district court or BAP)

decision that remands the bankruptcy court's ruling for further proceedings is not final, and therefore not appealable. The lead opinion applies the doctrine here to dismiss this appeal.

## II.

In the Sixth Circuit, "a decision by the district court [or BAP] on [intermediate] appeal remanding the bankruptcy court's decision for further proceedings in the bankruptcy court is not final, and so is not appealable to this court, unless the further proceedings contemplated are of a purely ministerial character." *Settembre v. Fid. & Guar. Life Ins. Co.*, 552 F.3d 438, 441 (6th Cir. 2009). In adopting this approach from the Seventh Circuit, and aligning with the majority of circuits, we stated that this approach would be consistent with the concept of "finality of district court decisions in general," asserting that "'final' should not mean one thing in [bankruptcy] and another in [non-bankruptcy]," *id.* (quotation marks and citation omitted), and that it would reduce litigation as compared with the minority approach or our then-existing approach, *id.*

Since adopting this approach in 2009, we have applied it a grand total of seven times. *See In re Bradley*, 588 F. App'x 480, 481-82 (6th Cir. 2014); *In re Decker Coll., Inc.*, 578 F. App'x 579, 580-81 (6th Cir. 2014); *In re Cyberco Holdings, Inc.*, 734 F.3d 432, 435-36 (6th Cir. 2013); *In re Bunn*, 578 F.3d 487, 488 (6th Cir. 2009); *In re Gruseck & Son, Inc.*, 558 F.3d 482, 484 (6th Cir. 2009); *In re Swegan*, 555 F.3d 510 (6th Cir. 2009); *In re Ayoub,* No. 17-2272, 2017 WL 7000266, at *1 (6th Cir. Dec. 4, 2017) (Order). None of those cases offers any new or additional basis or support for this approach, and its justification remains based on the theory that "final" should not mean one thing in bankruptcy and something else in non-bankruptcy.

In *Bullard v. Blue Hills Bank*, 575 U.S. 496, 135 S. Ct. 1686, 1691 (2015), the Supreme Court acknowledged that "[t]he rules are different in bankruptcy," meaning that finality in bankruptcy is *not* the same as in "ordinary civil litigation." A bankruptcy ruling is final and

appealable when it ends a discrete bankruptcy proceeding, fixes the rights of the parties, and has significant consequences for them. *Id.* at 1692; *see also In re Jackson Masonry, LLC*, 906 F.3d 494, 503 (6th Cir. 2018), *aff'd sub nom. Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582 (2020). The Court added an "additional consideration," explaining that "each climb up the appellate ladder and slide down the chute can take more than a year. Avoiding such delays and inefficiencies is precisely the reason for a rule of finality." *Bullard*. 135 S. Ct. at 1693.

Turning back to the present case, if we apply the *Bullard* finality test to the BAP's reverse-and-remand order, that order clearly fails the test. It does not end a discrete proceeding or fix the rights of the parties. Thus interpreted, *Bullard* is consistent with our *Settembre* approach.

But if we instead ignore the BAP's intermediate-appellate ruling and consider only the bankruptcy court's judgment, that judgment would pass the *Bullard* test. The bankruptcy court's judgment, which was final under any standard, ended a discrete bankruptcy proceeding, fixed the rights of the parties, and had significant consequences for them. *See Bullard*, 140 S. Ct. at 1692. Also, affirming that judgment would avoid the impending "delays and inefficiencies" from the parties' "slide down the chute" and "climb [back] up the appellate ladder." *See id.* at 1693.

But how could a Sixth Circuit panel openly ignore the BAP's intermediate-appellate decision as if it did not exist, and instead consider the bankruptcy court's judgment directly? It would certainly help to have some authority or rationale for such an unusual suggestion.

## III.

As it turns out, when ruling on the merits of a bankruptcy appeal, Sixth Circuit panels review the bankruptcy court's ruling directly; we do not review, or give any deference to, the intermediate decision by the district court or BAP. *In re Charfoos*, 979 F.2d 390, 392 (6th Cir. 1992) ("We evaluate the bankruptcy court decision directly, without being bound by the district

court's determinations."); *In re Millers Cove Energy Co., Inc.*, 62 F.3d 155, 158 (6th Cir. 1995) ("The court accords discretion in reviewing only the original bankruptcy court findings, not those included in the decision rendered by the district court, since this court is in as good a position to review the bankruptcy court's decision as is the district court." (quotation marks, editorial marks, and citations omitted)); *In re Dickson*, 655 F.3d 585, 589–90 (6th Cir. 2011) ("We review the decision of the bankruptcy court directly, giving no deference to the decision of the BAP."); *In re Connolly N. Am., LLC*, 802 F.3d 810, 814 (6th Cir. 2015) ("When we consider an appeal that originated in bankruptcy court, our review process is slightly different from our normal standard of review. We directly review the bankruptcy court's decision rather than the district court's review of the bankruptcy court's decision, recognizing that we are in as good a position to review the bankruptcy court's decision as is the district court." (quotation marks and citations omitted)); *In re Greektown Holdings, LLC*, 917 F.3d 451, 455–56 (6th Cir. 2019) ("On appeal from a district court's review of a bankruptcy court's order, we review the bankruptcy court's order directly rather than the intermediate decision of the district court.").

So, on the merits, the BAP's or district court's intermediate decision is effectively meaningless, a nullity; Sixth Circuit panels ignore it when deciding the appeal. But, under our *Settembre* approach to finality, that otherwise meaningless ruling is *determinative* for deciding jurisdiction. That is, unless a panel ignores the intermediate decision for that purpose too.

*In re M.J. Waterman & Assocs., Inc.*, 227 F.3d 604, 606-07 (6th Cir. 2000), was a Chapter 11 bankruptcy case in which the bankruptcy court approved the debtor's reorganization plan (final judgment), a creditor appealed, and the district court vacated the bankruptcy court's decision and remanded. The panel explained its jurisdiction:

15

> This Court has jurisdiction pursuant to 28 U.S.C. §§ 158 and 1291. We note that our review process is slightly different from our normal standard of review when reviewing appeals which originated in the bankruptcy courts. First, we directly review the bankruptcy court's decision rather than the district court's review of the bankruptcy court's decision. . . . [T]his Court accords discretion in reviewing only the original bankruptcy court findings, not those included in the decision rendered by the district court, since this court is in as good a position to review the bankruptcy court's decision as is the district court.

*Id*. at 607 (quotation marks and citations omitted). The panel affirmed the bankruptcy court on the merits, effectively reversing the district court. *Id.* at 612. To be sure, this opinion pre-dated *Settembre*, but it expressly considered its appellate jurisdiction and it is published.

*In re Schafer*, 689 F.3d 601, 604-05 (6th Cir. 2012), was a Chapter 7 bankruptcy in which the bankruptcy court held a state exemption statute constitutional, the trustee appealed, and the BAP reversed, holding the statute unconstitutional. The state appealed. The panel did not discuss its jurisdiction, beginning its analysis with the statement that, "[i]n reviewing cases appealed from the BAP, we focus our review on the bankruptcy court's decision," and then proceeded to the merits. *Id*. at 605. On the merits, the panel affirmed the bankruptcy court, effectively reversing the BAP. *Id*. at 616. This was published three years after *Settembre*.

*In re Mace*, 573 F. App'x 490, 495 (6th Cir. 2014), was a Chapter 13 bankruptcy in which the bankruptcy court ruled that a creditor's claim was viable, the debtor appealed, and the BAP reversed and remanded, holding that the creditor had not proven an enforceable claim. On appeal here, the panel did not discuss its jurisdiction expressly, beginning its analysis with the statement that, "[w]hen reviewing a case appealed from the BAP, we independently review the bankruptcy court decision, giving no deference to the BAP's opinion," and then proceeded to the merits. *Id*. at 495. On the merits, the panel "reverse[d] the decision of the BAP, affirm[ed] the decision of

the bankruptcy court, and remand[ed] the case to the bankruptcy court for further proceedings consistent with this opinion." *Id.* at 498 (capital converted to lowercase).

So, we apply *Settembre*'s jurisdictional limitation infrequently, having applied it only seven times in eleven years, not to mention inconsistently, given that we sometimes ignore it. It certainly appears that the parties here overlooked or ignored it; Wohleber did not raise it, we raised it ourselves. If we had overlooked it and decided this appeal on the merits, we would have reviewed the bankruptcy court's decision and—I believe—affirmed it, without consideration of the BAP's analysis, ruling, or remand order. That would have ended the action right here.

## IV.

We have jurisdiction to review non-final orders that are certified and accepted pursuant to 28 U.S.C. § 158(d)(2), 28 U.S.C. § 1292(b), or Federal Rule of Civil Procedure 54(b). Therefore, a party may pursue one of these avenues to appeal a non-final ruling from the district court or BAP. But Skurko and Gentile did not pursue any of these avenues in this case.

An appellant must request this "permissive interlocutory review"; we do not grant it sua sponte. *In re Decker Coll.*, 578 F. App'x 579, 581-82 (6th Cir. 2014) (quoting *In re Lindsey*, 726 F.3d 857, 858 (6th Cir. 2013)). So, this permissive interlocutory review is unavailable here.

Ultimately, because our precedent leaves this appeal neither final nor subject to permissive interlocutory review, the lead opinion correctly dismisses this appeal and I concur in that judgment.

## V.

The *Settembre* jurisdictional limitation is controlling precedent in the Sixth Circuit and the lead opinion applies it correctly in this case. But because that rule is misguided, I would argue for a different rule, one that establishes our jurisdiction over appeals in which *either* the bankruptcy court's judgment *or* the intermediate (BAP or district court) judgment satisfies the *Bullard* finality

test. That would comport with *Bullard*'s principles, expedite the bankruptcy review process, and align our approach to deciding jurisdiction with our approach to deciding the merits of the appeal.